## SELIG G. PUTZEL *vs.* THE DROVERS AND MECHANICS' NATIONAL BANK.

*Party wall— Right to Take down and Rebuild.*

A wall built partly on the ground of one, and partly on the ground of another of two adjoining owners, the portions of which they owned in severalty with an easement for the support of the rear wall of the house of one of them, may be removed by the other for the purpose of erecting a new and better wall, in the improvement of his property, although some inconvenience, while the building is going on, is thereby occasioned to the other owner, provided the new wall is built within a reasonable time, and with the least inconvenience to the other party, and the same right of support be allowed to his house which it had in the old wall, and he be indemnified for the necessary expense incurred by him in protecting his property from the consequences of the removal of the old wall.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the lower Court, (DENNIS, J.,) dissolving the injunction previously issued, and dismissing the bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, MCSHERRY, and BRISCOE, J.

*Lewis Putzel,* and *Richard M. Venable,* (with whom was *Hugo Stiner,* on the brief,) for the appellant.

The building of a house or wall upon a man's land is, perhaps, the most open, notorious and complete act of adverse possession known to law. With such a possession there can be no such thing as a *mixed possession* in the legal meaning of that phrase. It is well settled that

where a division wall is built wholly on the land of one of two adjacent owners, or partly on the lands of each, and stands for twenty years, it becomes a division wall. *Brown vs. Werner,* 40 *Md.,* 15, 19-20; *Dowling vs. Hennings,* 20 *Md.,* 179.

In the present case the user of the wall by the respective owners was specific and distinct, and, to the extent of such user or possession, exclusive and adverse.

The cases cited by the appellee (*Casey vs. Inloes,* 1 *Gill,* 500; *Armstrong vs. Risteau,* 5 *Md.,* 275-9; *Walsh vs. McIntire,* 68 *Md.,* 418;) relate to the persons exercising identical or similar powers of ownership promiscuously over the same land. If they were applied to the acquisition of incorporeal rights, the acquisition of a right of way by adverse user would be repelled by showing that the owner of the soil had himself occasionally used the way; and a division wall standing wholly or in part on the land owned by one of the adjacent proprietors could never become a party wall by adverse user.

In a case like the present there can be no question as to mistaken occupation; in almost all such cases the occupation is by mistake. See *Brown, et al. vs. Werner,* 40 *Md.,* 15; *Hiss vs. McCabe,* 45 *Md.,* 77; *Abbott vs. Abbott,* 51 *Maine,* 575; *Grim, et al. vs. Murphy,* 110, *Ill.,* 271, 277; *Crary vs. Goodman,* 22 *N. Y.,* 170, 174-5; *Ramsay vs. Glenn,* 45 *Minn.,* 401, 403, 406; *Wood on Limitation of Action, section* 263; *McLaughlin vs. Cecconi,* 141 *Mass.,* 252; *Hoffman vs. White,* 7 *So. Rep.,* 816; *Hitchings vs. Morrison,* 72 *Maine,* 334.

The doctrine of mistaken possession is only applied in cases where the character of the possession is such as not to indicate in itself and of itself an adverse claim, and proof of mistake is admitted to show that the equivocal act of possession was not designed to be such an assertion of claim as would make the possession adverse.

But, even if it be conceded that Putzel acquired no right in the Bank's land, the Bank had no right to pull down the part of the wall on Putzel's land. The most it could do would be to pare off the part of the wall on its own land. If Putzel acquired no right in the Bank's land, the Bank could acquire none in his; any interference with the part of the wall on Putzel's land would be a trespass.

Conceding that the wall had become a party wall, the proof is clear that the wall was not ruinous; and the law is clear that neither owner of an interest in a party wall has the right to remove it for any purpose without the consent of the other. *Eno vs. Del Vecchio,* 4 *Duer,* 53; *Sherred vs. Cisco,* 4 *Sandford,* 480; *Orman vs. Day, &c.,* 5 *Fla.,* 385; *Partridge vs. Gilbert,* 15 *N. Y.,* 601; *Potter vs. White,* 6 *Bos.,* 644; *Rogers vs. Sincheimer,* 50 *N. Y.,* 646; *Washburn on Easements,* 606, 609, 615.

The case of *Campbell vs. Mesier,* 4 *Johns.,* (*N. Y. Chy.*) 333, relied upon by the the appellee as to the right to take down a party wall, does not support the right to remove a sound party wall. The Chancellor said that it was well established that the wall in question when taken down was "in a state of ruin and decay, and dangerous, and utterly incapable of being partially cut down." All the cases in the books on the subject of taking down party walls, are cases where the wall is used as a common wall for two houses.

But the upper part of the wall was clearly the separate property of Putzel, having been in his exclusive use for twenty years, and not having been used by the appellee. There may be a private wall on a party wall entitled to an undisturbed right of support.

Building upon a division wall is an ouster from the ground covered by the wall, and if the use of the wall is continued for twenty years, title by adverse possession is acquired in the ground covered by the wall. *Smith*

*vs. Smith,* 110 *Mass.,* 302; *Stedman vs. Smith,* 8 *El. & Bl.,* 1. Building a wall upon a wall gives an easement for the support of the imposed wall. *Weston vs. Arnold,* 8 *Law Rep. Ch. Ap.,* 1084; *Knight vs. Pursell,* 11 *Ch. Div. L. R.,* 412; *Moore vs. Raynor,* 58 *Md.,* 411; *Price vs. McConnell,* 27 *Ill.,* 255.

The owner of the superimposed wall would, therefore, acquire an exclusive *jus in solo,* and an easement of support on the lower part of the wall.

To the extent of his user, which was the actual possession of the soil (*positio pedis*) the appellant acquired adverse rights to all inconsistent rights thereto on the part of the appellee; and the appellee to the extent of his user, (supporting an arbor) acquired adverse rights to all rights inconsistent therewith. *Dowling vs. Hennings,* 20 *Md.,* 179, 184; *Brown vs. Werner,* 40 *Md.,* 19–20.

An injunction is the proper remedy in a case of this kind. "It is a well established remedy when invoked to prevent the destruction of a house-wall, or to prevent the erection of a building upon complainant's soil." The building upon the soil of another is held to be a destruction of the inheritance. 1 *High on Injunction,* sec. 704; *Southmayd vs. McLaughlin,* 24 *N. J. Eq.,* 181; *Chicago, Burl. & Q. R. vs. Porter,* 72 *Iowa,* 426; *Hiss vs. McCabe,* 45 *Md.,* 77; *Clayton vs. Shoemaker, et al.,* 67 *Md.,* 216.

It is the proper remedy where the trespass goes to the destruction of the property as it has been held or enjoyed. *White vs. Flanagain,* 1 *Md.,* 544; *Mayor vs. Groshon,* 30 *Md.,* 445.

*James McColgan,* and *Bernard Carter,* for the appellee.

The allegation of the plaintiff's bill "that the appellee had no right or interest in said wall or in the land covered thereby, by reason of the said wall being a division or party wall, or for any other reason or on any

other ground whatsoever," is conclusively disproved by the title paper of the appellee, which establishes in the appellee an absolute paper title to the land under all that part of the wall which the appellee was about to take down when the injunction was granted.

The testimony shows a constant use by the appellee and those in privity with it in title, of the wall in controversy, for all the purposes needed by the owner of the property conveyed by Hartman to the appellee. Nor has the appellant attempted to show, either by himself or his witnesses, any exclusive use of this wall such as required by the rule in *Casey vs. Inloes*, 1 *Gill*, 500; *Armstrong vs. Risteau's Lessee*, 5 *Md.*, 275–279; *Walsh, et al. vs. McIntire*, 58 *Md.*, 418.

The allegation of the bill that the removal of said rear wall, or any part thereof, will render said dwelling house untenantable, and will compel the appellant to remove therefrom, or make the occupation of said house dangerous, or would inflict irreparable damage upon the appellant, is conclusively disproved.

The appellee in this case is pecuniarily able to pay any damages that may be recovered against it, and if the appellant suffers any damages or inconvenience from the acts or negligence of the defendant, he has a full and adequate remedy at law, and a jury would certainly give him ample compensation. This alone would disentitle him to an injunction. *Whalen vs. Delashmutt*, 59 *Md.*, 253, 254; *Hamilton vs. Ely*, 4 *Gill*, 38; *Amelung vs. Seccamp*, 9 *G. & J.*, 472, 473; *Lanahan vs. Gahan*, 37 *Md.*, 106, 107.

The appellant alleges in his bill of complaint, that the wall in controversy *is upon land which is entirely covered by the appellant's title.* This allegation is positively denied by the answer. And so far from offering any evidence to support his allegation, the appellant's deed filed with the bill, and with the examiner, taken in con-

nection with the uncontradicted testimony, shows conclusively that the said wall was built upon the dividing line between the lots of the appellant and appellee. Having thus located the limits of his claim of title by placing his deed upon the public records, he does not pretend that he ever made any positive claim of title of any kind to any property outside of the limits set out in his deed.

The appellant's counsel therefore originally based his claim of adverse possession upon an occupation by mistake; but this view they subsequently appeared to abandon in view of the decision in *Davis vs. Furlow's Lessee*, 27 *Md.*, 545, and now rely, as we understood at the argument in the Court below, wholly upon a claim by adverse possession, based on the fact that the rear wall of the house occupied by Putzel, extends west of the dividing line of the lot described in his deed. But this fact, considered in connection with the clear and uncontradicted testimony on the part of the appellee, is not sufficient to establish a disseisin or ouster of the appellee, or those under whom it claims; and the authorities in Maryland clearly show that the acts of possession relied on to make out an adverse holding must be sufficient to establish such ouster or disseisin. To establish such ouster or disseisin, the acts of possession must be hostile, open, notorious and exclusive, and must have been continuous for twenty years. They must be such as unmistakably indicate a claim of the absolute title in fee. *Walsh vs. McIntyre*, 68 *Md.*, 418; *Armstrong vs. Risteau's Lessee*, 5 *Md.*, 275–279; *Casey vs. Inloes*, 1 *Gill*, 500.

It follows, upon the evidence in this case, that the fact that a portion of the wall in question extends beyond the west line of appellant, is not sufficient to establish title in the appellant to the land covered thereby. The witnesses, Hartman and others, show a constant use by the defendant, and those in privity with

it in title, of the wall in controversy, for all the purposes needed by the owner of the property conveyed by Hartman to the appellee. Therefore, the occupation of the ground covered by the said wall was not, and could not be, on the part of appellant, and those under whom he claims, exclusive, hostile and notorious, as required by the rule laid down in the above cases.

The case of *Phillipson vs. Gibbon,* 6 *L. R. Chan. App.,* 428, shows that far less user than the defendant here exercised upon this western wall, negatives all claim of adverse possession.

If the wall in controversy should be considered a party wall, by reason of its being built partly on each of the abutting owners, then the appellee had a right of temporary removal and re-erection, when necessary, for the safe and beneficial occupation and use of its property, upon protecting the plaintiff from all damage caused by such removal, and bearing all the expense thereof, all of which it offered to do. See 3 *Kent's Comm.,* sec. 437.

This is the only rule consistent with the existence of this species of property, and the exigencies of modern times, and is fully approved of by the cases of *Cubitt vs. Porter,* 8 *B. & C.,* 257; *Campbell vs. Mesier,* 4 *Johns. Ch.,* 334; *Hieatt vs. Morris,* 10 *Ohio State,* 523; *Glenn vs. Davis, Trustee, &c.,* 35 *Md.,* 212, 218, 219.

It may be contended that, assuming that the western half of the wall in controversy is owned by the defendant, and the eastern half by the plaintiff, as if they were separate and distinct walls, built on the lands of the parties respectively, the plaintiff is entitled to an easement for lateral support in the defendant's wall, but no such easement can be acquired by any lapse of time. *Solomon vs. Vintner's Company,* 4 *H. & N.,* 599; *Peyton vs. Mayor, &c.,* 9 *B. & C.,* 734.

There is no claim of easement on behalf of the appellant made in the bill of complaint. The appellant set-

ting up title to the whole of the land covered by the wall mentioned, no such claim of easement could consistently be made, as the appellant could not claim title to the property and an easement at the same time.

Moreover, the intended action of the appellee, in putting up a new wall, under the circumstances above mentioned, would not have interfered with the enjoyment of that easement.

BRYAN, J., delivered the opinion of the Court.

Selig G. Putzel filed a bill in equity against the Drovers and Mechanics' National Bank of Baltimore. It was alleged that the defendant. without right or justification was about to tear down the rear wall of the complainant's dwelling-house, and thereby render it untenantable and do him irreparable damage. The bill prayed an injunction to restrain the defendant from proceeding as alleged, and it was accordingly granted before answer. There was also a prayer for general relief. After answer the defendant moved a dissolution of the injunction. Testimony was taken on both sides, and when the cause came to final hearing the injunction was dissolved, and the bill dismissed. Complainant appealed.

We think that a statement of the material facts of the case as they appear to us will sufficiently show the grounds of our opinion, without the necessity of a discussion of the testimony of the different witnesses. Putzel, the complainant, is the owner of a leasehold interest for ninety-nine years, renewable forever, in a lot of ground in the City of Baltimore, on the west side of Eutaw street, between Fayette and Lexington streets. He acquired this property in the year eighteen hundred and sixty-six. For many years before his purchase, and ever since then, there has been on this lot a substantial brick dwelling house, which extended back to its westernmost boundary. The Drovers' and Mechanics' Bank

in the year eighteen hundred and eighty-eight, became the owner of a leasehold interest in a lot of ground fronting on Fayette street, and running back northerly to Marion street, and binding for a portion of its easterly line on the westernmost boundary of Putzel's lot. It is not distinctly stated in the record, but this leasehold interest is evidently for ninety-nine years, renewable forever. The Bank's lot and Putzel's lot are separated by a division brick wall, which, by the measurements proved in the case, is shown to be built partly on the ground of one of these parties, and partly on the ground of the other. This wall has been standing for a very long time, certainly for more than thirty years before the transactions which are the subject of complaint in this case. As far as we can ascertain from the testimony, Putzel's house, as originally built, had this division wall as its rear wall, but the rear wall was not built higher than the top of the division wall. In eighteen hundred and seventy, Putzel put an additional story on the back building, placing its rear wall on the top of the division wall. This division wall was used by the owners and occupants of the lot now owned by the Bank for the purpose of designating the boundary line between it and the Putzel lot. There was evidence of the use of it also for a series of years as a support for the frame of a grape arbor. The Bank, in the year eighteen hundred and ninety-two, commenced the erection of a large six story building for the purposes of its business, and in the prosecution of the work proposed to take down the entire wall separating the two lots, and erect on the same line another wall of sufficient strength and thickness to support the new building, not encroaching on Putzel's lot, and offering to give him the benefit of the new wall as a partition wall for the benefit of any building to be erected on his lot. The question in the case is whether this action on the part

of the Bank would be a legitimate exercise of its rights of property.

No one seems to know when the wall in question was built; in all probability the time was beyond the limit of living memory. There is some reason to think so from the fact that the deeds which created the leasehold interests in these lots were executed towards the close of the last century, and early in the beginning of the present. It seems to have been erected for the purpose of marking the boundary between the lots, and to have been always used for that purpose. The soil of the respective owners was covered by it, and this was the use of his soil which each owner elected to make for his own benefit. Each one owned the portion of the wall which was on his own ground. There seems to have been no cessation of the use of it, in the way in which it was intended to be used, that is to mark the boundary line. There was no ouster of the possession of the soil. Each co-terminous proprietor owns the portion of the wall which rested on his own ground, as he had continued to own it from the beginning; and he has actual and beneficial possession of the soil by reason of the occupation and use of it by means of his portion of the wall. Surely there could not be a more distinct and unequivocal exercise of the right of ownership than to build on one's own land a house or a wall, and to use it continuously for the purposes to which it was suitable. It is hardly necessary to refer to decided cases, but one case was cited in the argument having such peculiar features, that it may well be mentioned while we are considering the subject. The question was about the title to certain property in the City of London, which was occupied by a brick house. In the south wall of the house there was a stone tablet, bearing an inscription which stated that when New street was widened nearly a century before the time in question, this wall

had been built by the East India Company, and that it remained their property. The house had been claimed by the plaintiffs and their predecessors in title, and occupied by their tenants for thirty-eight years, and during all that time there had been no acknowledgment of the title of the East India Company; upon these facts the question of adverse possession was presented. The Court, however, speaking of the inscription on the tablet said: "It was in truth, a statement on the wall itself that the wall, forming a substantial part of the property, had been erected by and was the boundary wall of the adjoining owner, for the East India Company of course continued to be the owner of the soil of the street, although dedicated to the public. There was nothing, therefore, whatever, to lead to the presumption that any title had been gained adverse to that of such adjoining owner by adverse possession. Where there is a boundary wall, and that boundary wall remains undisturbed, and an inscription is allowed to remain on it, which states that it is the boundary wall of the adjoining proprietor, it seems to us idle to suppose that any question of the Statute of Limitation or of adverse possession, or of cesser of possession could properly arise. It was, therefore, manifest that the wall belonged to the East India Company." *Phillipson vs. Gibbon, L. R.*, 6 *Chancery Appeals*, 428. We pass by the use of the wall as a support for the grape arbor, because that was significant only as tending to show an act of ownership, and we think that the ownership is fully maintained on the grounds already stated. But although there was no amotion of the possession of the owners of the Bank lot, it does not follow that Putzel had not acquired some rights to the use of the division wall. He had used this wall for more than twenty years as a support to his house; the enjoyment of it for this purpose had been notorious, peaceable, uninterrupted, and "as of right."

Under these circumstances the law considers that he had a prescriptive title to the use of it in the manner in which he had enjoyed it. It is conducive to the peace of society that claims of right which for a long time have been acquiesced in and regarded as settled should be protected by the law, and the space of twenty years has been adopted as the period for ripening claims of this description into titles. Putzel used this division wall as the rear wall of the lower part of his house, and also used it as a support for the wall of an additional story. To the extent of such use his title is clearly established. We have said that this use was not an ouster of the co-terminous owner from the possession of the soil. It was an easement for the support of the rear wall of the house. By the common law easements must be established against an owner of an estate of inheritance; although they may arise from user, such user is regarded by fiction of law only as evidence of a grant, and as the right claimed is of a permanent nature, it is said that the supposed grant could have been legally made only by a party who could impose a permanent burden on the servient tenement; that is to say, by the owner of an estate of inheritance. But in this case we have no concern with this principle of the common law, and need not inquire into its application, or into seeming modifications of it. Both of the lots in question are held under leases for ninety-nine years, renewable forever; and it is well settled that the holders of such leases have the absolute control and management of the property; they usually have, in point of fact, far more valuable interests in it than the reversioner who holds the estate of inheritance. *Crowe vs. Wilson*, 65 *Md.*, 481, 482. The Bank retained all its rights in the division wall which are not inconsistent with the enjoyment of the easement. It was bound to permit it to be used as a support for Putzel's house in the accustomed

manner; but this is the limit of its obligation.  It
would be unreasonable to deny to it the right to im-
prove its own property according to its interests and
inclinations; provided it did not infringe the rights of
other persons.  In fact the wall which it proposed to
take down was insufficient to support the building which
it desired to erect.  If this should be taken down and
another larger and stronger one built in its stead, it
would thereby exercise its own legitimate rights of
property; and if it gave to the adjoining house the
same right of support in the new wall, which it had in
the old one, it would not injure its neighbor.  This
seems to us the just settlement of this controversy.
Putzel may be put to some inconvenience while the
building is going on, but this is one of the unavoidable
consequences of living in a closely built city.  We have
said that each portion of this division wall belonged in
severalty to the proprietor on whose ground it stood,
but, even if these proprietors had been tenants in com-
mon of this wall, the result would not have been practi-
cally different.  In *Standard Bank vs. Stokes, Law Re-*
*ports, 9 Chan. Div.,* 72, Sir GEORGE JESSEL cites with
marked approval *Cubitt vs. Porter,* 8 *Barn. & Cress.,* 257.
He quotes as follows from the opinion of Mr. Justice
BAYLEY: "There is no authority to show that one ten-
ant in common can maintain an action against the other
for a temporary removal of the subject-matter of the
tenancy in common, the party removing it having at the
same time an intention of making a prompt restitution.
It was not a destruction.  The object of the party was
not that there should be no wall there, but that there
should be a wall there again as expeditiously as a wall
could be made."  And in a subsequent part of his
opinion, he says: "As I have read the law from the
statements of eminent Judges, he (that is a tenant in
common,) has a right to pull down when the wall is

neither defective, nor out of repair, if he only wishes
to improve it, or put up a better or handsomer one.''
Chancellor KENT was of the same opinion. In the fol-
lowing passage from his *Commentaries,* (*volume* 3, *page*
437,) he assumes the right as settled: ''If there be a
party wall between two houses, and the owner of one of
the houses pulls it down in order to build a new one,
and with it he takes down the party wall belonging
equally to him and his neighbor, and erects a new house
and new wall, he is bound on his part to pull down and
reinstate it in a reasonable time, and with the least
inconvenience.'' And from the remarks of Chief Jus-
tice BARTOL, in *Glenn vs. Davis,* 35 *Md.,* 219, it may be
readily inferred that the opinion of this Court was the
same.

The allegations of the bill of complaint were sufficient
to give a Court of equity jurisdiction and they justified
the preliminary injunction. The complainant has not
proved the precise title to the wall which he alleged;
although he has proved a title to a portion of it and an
interest in the other portion by way of easement. For
the reasons which we have stated, we approve of the dis-
solution of the injunction, and to that extent the decree
below will be affirmed. But the right to take down the
wall is not absolute and unconditional; it is qualified in
the manner which we have explained in a previous part
of this opinion. The Bank is bound to finish the divi-
sion wall at its own expense, and to allow to Putzel's
house the same right of support which it had in the old
wall, and to indemnify him for the necessary expenses
which he has incurred and may incur in protecting his
property from the consequences of the removal of the
old wall. For failure to do these things it would be lia-
ble to an action at law. But as a Court of equity had
jurisdiction of this case, although it could not give the
precise relief prayed, it was proper, according to well set-

tled principles, to do complete justice between the parties, and thus avoid multiplication of suits in the future. It ought to have retained the bill for the purpose of settling and adjudicating any claim which may arise in favor of Putzel against the Bank, in accordance with the principles which we have stated. We disapprove of that portion of the decree which dismisses the bill.

> *Decree affirmed in part, and reversed in part, and cause remanded for further proceedings; the costs in this Court to be equally divided between the parties.*