Oscar R. BOUGH and James A. Bough,
Plaintiffs,

v.

Michael P. GOELET, Defendant.

Civ. No. 42–1966.

District Court, Virgin Islands
D. St. Croix.

March 11, 1969.

Warren Young, Young, Isherwood, Gibbs & Carney, Christiansted, St. Croix, V. I., for plaintiffs.

John F. James, James, Hodge & Tonkin, Christiansted, St. Croix, V. I., for defendant.

## ACTION FOR TRESPASS AND INJUNCTION

## OPINION

CLARY, District Judge (sitting by special designation).

This case presents a bizarre situation. Despite the fact that a potential recovery of over $40,000 is involved, neither party to this action has deigned to order the Notes of Testimony, although readily available. Consequently the Court is left to its own devices and recollections from notes made at the time of trial.

Oscar R. Bough and James A. Bough, distinguished citizens of the Virgin Islands and now or formerly public officials, owned the corner property located at the corner of Queen Street and Church Street in the city of Christiansted, St. Croix, U. S. Virgin Islands. The property has an address designation of No. 14 AB Church Street, Christiansted. The adjoining property to the west, which runs from Queen Street through to Company Street on the north, was purchased by the defendant, Michael P. Goelet, a former executive vice president of one of the largest construction contractors in the City of New York, in December of 1964. Since that time the new modern Charte House has been built on the portion of the property adjoining Queen Street, with an entrance from Company Street alongside of and also through a store property ("Little Switzerland") covering the remainder of the land along Company Street. The street designation of this property is Plot 61 Queen Street and Plot 2 Company Street, Christiansted. For perhaps as long as 150 years, a rounded wall separated the two properties precisely on the boundary line. The former owner of Plot 14 AB Church Street, predecessor in title to the Bough brothers some forty or more years ago, used approximately 20 feet of the top of the wall to support a kitchen in the rear of the Bough property; also part of the wall almost directly adjacent to Queen Street (still standing) was used as a cistern.

Immediately upon the purchase of the property by the defendant, Michael P. Goelet, he told the Bough brothers that he had had the property surveyed and that it was necessary for him to demolish a part of the wall. The Boughs protested and said that by the use of the wall as part of the kitchen for more than the statutory period they had obtained title to the entire wall by virtue of adverse possession; that while they had abandoned, eight years before, the use of the wall as a support for the kitchen, they had continued to assert title by erecting a catwalk on their newly constructed building over the entire wall to its western extension, and that defendant could not use any part of the wall or damage any part of the wall without answering to them.

Contrary to the usual amenities between landowners in the Virgin Islands, Goelet immediately proceeded to act without further notice. He demolished about 20 feet of the wall and laid his new building footing not only on the land covered by the wall, but also extended it beyond that point to the rear of plaintiffs' building. In the construction of the building, defendant also eliminated part of the catwalk, although he did incorporate the plaintiffs' run-off water pipe within the limits of his building.

The case was tried on the theory advanced by the Boughs, and the Court so instructed the jury that it might find adverse possession under the facts above enumerated. The jury returned a verdict in excess of $9,000 actual damages and $30,000 punitive damages. The explanation of the punitive damages, perhaps, was that there was testimony in the case that to remove the building back to the west side of the wall (one of the prayers of plaintiffs' complaint) would entail the expenditure of $30,000 on the part of Mr. Goelet. Since his actions constituted an "insult" to the Boughs, as that term is technically

known on the isle of St. Croix, the jurors undoubtedly concluded that he should be made to pay for his forthright actions, taken without observing the amenities ordinarily extended between landowners.

Having examined the facts of the case at bar, we turn now to the legal principles which will control our decision. The basic issue in this case is whether plaintiffs' claim of title to the entire boundary wall which separated their property from that of the defendant can be substantiated. Plaintiffs base their claim of title on their alleged adverse possession of the wall for the statutory period. In so doing, however, plaintiffs have ignored another very important concept of property law which must be considered, that is, the acquisition of property rights by prescription.

■■■ The basic distinction between the very analogous and often confused concepts of adverse possession and prescription is in the nature of the rights acquired. Adverse possession concerns itself chiefly with the acquisition of an estate in fee simple absolute, while prescription, on the other hand, is wholly concerned with the acquisition of incorporeal hereditaments or rights in the lands of another, such as easements and rights in party walls or division fences. Much of the confusion of these distinct concepts can be attributed to the fact that, in general, the conduct required to acquire an interest under both concepts is identical, except that in prescription the scope of the interest acquired is more closely tied to the details of the hostile conduct than it is in adverse possession. See 6 Powell on Real Property, § 1026 (1968 ed.)

■■■ In view of the facts presented by this case, particular note must be made of this last point. It has long been an established principle of the law of adverse possession that the use made of the true owner's land must be of such a nature that he is put on notice that the user is adverse and hostile to his title. In the case at bar, plaintiffs never exercised dominion in any traditional sense of the word over the land of the defendant which they claim. The mere incorporation of a boundary wall into a building resting entirely on the builder's property is not an act of dominion over the land of the adjoining property owner on whose land part of the wall is laid. On the contrary, since it was not disputed that the wall in question was on the boundary line of the two properties, making such use of a boundary wall is a perfectly proper exercise of that owner's rights in the wall and his land. Therefore, such action is not sufficient to put an adjoining landowner on notice that the builder of the building incorporating the boundary wall is claiming the full title to the entire wall and the land thereunder to the exclusion of his neighbor. Absent this requirement of an exercise of dominion over the defendant's portion of the boundary wall, plaintiffs' claim to title of the entire wall by adverse possession must fall. Maremont et al. v. Ovenu et al., 329 Ill. 374, 160 N.E. 572 (1928).

Faced with a factual situation almost identical to that in our case, the Court in Putzell v. Drovers & M. National Bank, 78 Md. 349, 28 A. 276, 277, 22 L. R.A. 632 (1894) said:

"It [the wall] seems to have been erected for the purpose of making the boundry between the lots, and to have been always used for that purpose. The soil of the respective owners was covered by it; and this was the use of his soil which each owner elected to make for his own benefit. Each one owned the portion of the wall which was on his own ground. There seems to have been no cessation of the use of it, in the way in which it was intended to be used,—this is, to mark the boundary line. There was no ouster of the possession of the soil * * *."

This conclusion is in no way modified by defendant's failure to utilize his portion of the boundary wall until the occasion which prompted this suit. In the case of Girard Trust v. Dennis, 4 Pa. Dist. & Co.R.2d, 759 (Pa.1955), the

Court held that even though plaintiff and its predecessors in title had been in exclusive possession of a building which incorporated a party wall, they had still not acquired by adverse possession the other half of the party wall, despite the fact that the other party never used it as a part of a structure.

Since plaintiffs' claim to a fee simple title by adverse possession cannot be proved, whatever rights they have acquired in the boundary wall by virtue of their use of it must be based on the doctrine of prescription. And in determining the extent of plaintiffs' rights therein, we can apply the above-mentioned rule that the scope of the interest acquired is closely tied to the details of the conduct of the parties.

In the case at bar, the sole use made of the wall in question by plaintiffs and their predecessors in title was as a portion of various structures erected on their property. Quoting again from Putzell v. Drovers & M. National Bank, supra, at 278:

> "We have said that this use [i. e., the incorporation of the boundary wall into a building] was not an ouster of the coterminous owner from possession of the soil. It was an easement for the support of the rear wall of the house. * * * The bank [other owner] retained all its rights in the division wall which are not inconsistent with the enjoyment of the easement."

■ Hence, it is this Court's decision that the right acquired by the use of such a wall in the manner present in this case after the statute has run is an easement by prescription for the support of the building so constructed and not title to the land covered by the boundary wall. Therefore, defendant retained all his rights in the wall not inconsistent with plaintiffs' easement for support.

Before writing this Opinion, the Court considered and had argued motions for a new trial and for judgment N.O.V. Before coming to a firm conclusion, the Court, working individually through counsel for each party, strongly urged a settlement. The Court did not have any direct contact with either plaintiffs or defendant. To the surprise of the Court, the defendant made a substantial offer in settlement which was promptly refused by the plaintiffs.

■ It is abundantly clear from the foregoing that the plaintiffs, by their action in removing the kitchen roof from the wall, abandoned any right of support. By placing a catwalk over defendant's property, they actually violated the air space above his property and he had every right to remove that part of the catwalk which covered the west side of the wall as determined by the survey.

The verdict on which judgment has been entered will be vacated, as well as the assessment of costs and attorneys' fees. Since, however, it is clear from the photograph (Exhibit 1) and other measurements testified to at the trial that the defendant may have encroached upon plaintiffs' land beyond the east half of the wall by part of his building, a new trial will be granted limited to damages only. The motion for judgment N.O.V. is denied.