LEXINGTON LODGE v. LULA G. BEAL.

[49 South. 833.]

1. PARTY WALLS. *Deeds. User.*

Where a deed to a strip of land off of the south side of the grantor's lot reserved a right in the grantor to use the wall which the grantee contemplated building on the north side of the strip, and required openings to be left in the wall, so that the grantor could have access through the grantee's building to the upper floors of any house that he might erect on the balance of his lot, a common wall constructed and used accordingly for many years became and was a party wall.

2. SAME. *Destruction. Reconstruction.*

Where a party wall, after the destruction of one of the connected buildings, was found to be too weak to support a new and taller building which the owner of the destroyed one wished to erect, he may tear down the old wall and replace it with a new one, although the owner of the other building would be inconvenienced thereby and the old wall is sufficient for his purposes, but the rights of the parties in the new wall will be the same as in the old one.

3. SAME. *Same. Negligence.*

The right of a co-owner to tear down and rebuild an insufficient or dangerous party wall must be so exercised as not to inflict avoidable injury on the owner of the adjoining building and such owner may recover for the negligent exercise of the right.

4. SAME. *Decree sustaining right. Harmless error.*

A decree in equity sustaining the right of an adjoining owner to tear down and reconstruct a defective or insufficient party wall should, without prescribing specifications, provide that the work be done with proper care to avoid needless injury to the adjoin-

ing owner, and, ordinarily, require an indemnifying bond to protect defendant against avoidable damage resulting from the work; but a decree will not be reversed on appeal because it prescribes specifications for the work where they are admittedly proper ones, nor because of a failure to require an indemnifying bond from a solvent complainant, no demand having been made therefor by the defendant in the trial court.

FROM the chancery court of Holmes county.

HON. JAMES F. McCOOL, Chancellor.

The Lexington Lodge, No. 24, of Free and Accepted Masons and Lexington Royal Arch Chapter, No. 9, appellants and cross-appellees, were complainants in the court below; and Mrs. L. G. Beall, and another, appellees and cross-appellant, were defendants there. From a decree partly in favor of, but unsatisfactory to, complainants they appealed to the supreme court, and the defendants prosecuted a cross-appeal.

The opinion of the court states the facts.

*Tackett & Elmore,* for appellants and cross-appellees.

It was erroneously contended by the appellees and cross-appellants in the court below that the wall in controversy was a party wall; and that as a rule the appellants and cross-appellees had no right to interfere in any way that would deprive appellees and cross-appellants of the use of the wall, notwithstanding the effects of the fire. We contend that the fire effected such a radical change in the surroundings that all easement rights which appellees and cross-appellants previously enjoyed in the wall were ended. This is true, without regard to the safe or unsafe condition of the wall at present. *Hoffman v. Kuhn,* 57 Miss. 750; *Partridge v. Gilbert,* 15 N. Y. 601; *Sherrard v. Cisco,* 4 Sandf. 480.

To hold that, so long as the wall stands the owner whose house has been destroyed is compelled to lose the use of his lot or to replace the destroyed building with another of exactly the same pattern, is to impose in perpetuity a servitude which was assumed only for a specific purpose. *Hieatt v. Morris,* 78 Am. Dec. 280.

The bill charged that the walls, and especially the north wall, are dangerous and unsafe; and the court below properly found that this allegation had been sustained by the proof. When a party wall becomes dangerous and unsafe, or unfit for the use for which it was erected, either of the owners may, by giving reasonable notice to the other, proceed to tear down so much of the wall as is situated on his own land, and if he uses reasonable care and skill under the circumstances, he is responsible for no damage accruing to the other party; nor shoud he be required to see that the roofs and floors of the other's building be properly supported, nor should he be required to take affirmative measures to protect the stock of merchandise of the other party at his own expense. *Partridge v. Gilbert, supra; Crawshaw v. Sumner,* 56 Mo. 577; *Maypole v. Forsyth,* 44 Ill. App. 494.

*Boothe & Pepper,* for appellees and cross-appellants.

The evidence shows that the wall as it now stands is reasonably safe as a support for appellees' two-story building. But the wall is not capable of supporting a new three-story building which the appellants contemplate erecting.

If a party wall, on the destruction of the building, is rendered insufficient for the use contemplated by the owner of the destroyed building, it is no objection to his rights to tear down and reconstruct the wall that the adjoining owner will be put to inconvenience and that the existing wall is insufficient for his purposes. *Weems v. Mayfield,* 75 Miss. 286, 32 South. 892; Code 1906, § 3565; *Putzell v. Bank,* 78 Md. 349; *Keiffer v. Dickson,* 41 Ind. App. 543; *Montgomery v. Masonic Hall,* 70 Ga. 38; *Lederer v. Colonial Investment Co.,* 130 Iowa, 157; *Hunt v. Ambruster,* 17 N. J. Eq. 208. It is not necessary that a party wall should stand half-way upon each of the adjoining parcels of land; it may stand half-way upon each or wholly upon one and may or may not be the common property of the two land owners. 30 Cyc. 774.

A decree which sustains the right of the adjoining owner to tear down and reconstruct a party wall should go no further

than to require that the work be done with proper skill and care to avoid injury to the adjoining owner, and the decree should not prescribe the specifications for the work.

Argued orally by *W. P. Tackett,* for appellant, and *A. M. Pepper,* for appellee.

ALEXANDER,[*] Special Judge, delivered the opinion of the court.

In 1846 the Lexington Masonic lodge purchased the south half of lots 60 and 61 in the town of Lexington. The north half of said lots was then owned by one Samuel Hoskins. About the year 1858 the lodge erected a three-story brick building, which covered the land so purchased by it and also a strip of land six feet wide off the south side of the north half of the Hoskins lots. It does not appear how the lodge originally acquired this strip, but the deed records disclose a conveyance executed in 1866 by the administrator of Samuel Hoskins, which purports to have been executed under an order of the probate court and recites that Samuel Hoskins in his lifetime had sold to the Lexington lodge and chapter this strip of land upon the condition that Hoskins should have and enjoy the right or privilege of connecting with the then contemplated Masonic Hall, both in the front and rear of said lot, and that the lodge should, in erecting its building, leave openings in the north wall for doors to afford entrance into the upper story of the building contemplated to be erected by Hoskins, and that Hoskins should enjoy the right of entrance to said rooms forever.

At the time the Masonic Hall was erected or shortly thereafter, Hoskins also built a two-story brick storehouse on his lot. It is not shown, otherwise than from the recitals in the administrator's deed aforesaid, what agreement, if any, there was as

---

[*] Judge Smith having been of counsel in this case before his appointment to the bench recused himself and C. H. Alexander, Esq., a member of the supreme court bar, was selected and presided in his place.

to the division wall between the two buildings; but the evidence leaves no doubt that the mutual intention was that the wall should be used as a party wall. There is some controversy as to whether this wall was built wholly on this strip of land, or whether some part of it or its footings projected on the Hoskins lot. However this may be, it is certain that the foundation extended beneath the cellar of the Hoskins building, and the wall was constructed in such a manner as to serve as a support for both buildings. Joists for both buildings were let into the wall, the openings therefor extending entirely through the wall, and the joists connecting, so that when the Masonic Hall was burned the ends of some of the joists of the adjoining building were burned. Moreover, there were two or three doors in the walls at the second floor, and the entrance to the second floor of the Hoskins building was through the stairway of the Masonic building and these doors. This condition of things continued until 1892, when the heirs of Samuel Hoskins conveyed the entire north half of lots 60 and 61 to Baxter Wilson. This description, it will be noted, made no exception of the aforesaid strip of land. Wilson made some changes in his building, among other things, closing up and filling in the doorways in the wall, and discontinued the use of the stairway of the Masonic Hall, and thereafter, until the building was destroyed by fire, a period of more than ten years, the wall remained solid and was used only as a party wall. It further appears that Wilson made no claim to the strip of land, but recognized in various ways the ownership thereof in the Masons. In 1906 he conveyed his lot to appellee, Mrs. Beall, describing it as the "north half of lots 60 and 61 according to the official map of the city, the same being that store building and lot now occupied by the said Baxter Wilson and used in conducting a hardware business in said city." Before this, in 1902, the Lexington lodge and chapter built in the rear of their building a one-story brick annex, extending for this purpose the division wall to the height of one story. Later, in 1906, Mrs. Beall, also wishing to enlarge her

hardware store, sought and obtained from the lodge a contract by which, for a consideration of $100 she was given the right to erect at her own expense another story on the one-story wall of the annex to the lodge building. This contract stipulated that it should not be construed as conveying any interest in the land on which the annex wall was situated. She thereupon extended her two-story brick building the entire length of the annex.

On December 29, 1907, the three-story brick building owned by the Masonic lodge and chapter was accidentally destroyed by fire. Neither the annex nor the adjoining building of Mrs. Beall was burned, and the north wall of the Masonic Hall, which was the south wall of appellee's building, was left standing to the height of two stories and still serves as a support for appellee's building; but some of the sleepers and joists which were let into the party wall were so badly charred as to necessitate the bracing up of the floors of the building. The Masonic bodies, desiring again to build a three-story brick building to cover their entire lot, sought the opinion of architects as to the strength and safety of the wall, and, being advised that on account of its original faulty construction and its weakened condition as the result of the fire it would not, if built upon, sustain the weight of their new building, entered into negotiations with appellee to obtain her consent for the tearing down and rebuilding of the wall. These negotiations culminated in a written proposition from the lodge, offering at its own expense to demolish and rebuild, and containing detailed specifications as to the manner in which the work should be done and the precautions proposed to be taken in the progress of the work. This offer was refused in writing by appellee, and her refusal was accompanied by a formal notice that she objected to any attempt to remove or repair the south wall of her building.

Thereupon the Masonic lodge and chapter filed this bill, seeking to enjoin Mrs. Beall and others from interferring with them

in tearing down the wall for its entire length and rebuilding the same, and also praying that she be required at her own cost and expense to protect her building during the progress of the work. Much testimony was taken as to the present condition of the wall, both that of the Masonic Hall proper and that of the annex, and also as to the probable danger which would result to the building and merchandise of appellee. The court decreed in favor of complainant, that they were the owners of the strip of land in question and that they were entitled to tear down and rebuild the wall for its entire length at their own expense, but embodied in the decree the requirement that the work should be done in accordance with certain specifications, which were the same as those contained in the written proposition of settlement which had been made by complainants and refused by defendant. The decree also taxed complainants with half the costs. From this decree complainants appeal, and defendants prosecute a cross-appeal.

We concur with the chancellor in his finding that appellants, complainants in the court below, are the owners of the strip of land described as six feet off the south side of the north half of lots 60 and 61 in the town of Lexington. But this ownership has throughout been burdened with an easement or servitude in favor of the owners of the adjoining lot, who have an undoubted right to have the wall in question treated as a party wall. We deem it immaterial to inquire whether the wall rests wholly on the said strip of land, or whether, as appellees contend, some part of it, or at least some part of its footings, project on her lot—a question that might be very material if the wall had been totally destroyed, and it was purposed by either party to rebuild it without the other's consent. The front portion of the wall, as stated, is still standing to the height of two stories, and the rear portion, which divides appellee's building from the annex, and which is comparatively new, was not appreciably injured by the fire; but there is evidence showing that, on account of inferior material and faulty construction, it is insufficient for the

contemplated new building. The evidence fairly establishes that the wall as it now stands and for its entire length is reasonably safe as the support for the two-story building of appellee, especially since it has been reinforced and strengthened by her since the fire; but it is, we think, equally apparent from the testimony that the wall is not capable of supporting the new three-story building which appellants contemplate erecting, and, if built upon, would be unsafe and dangerous.

It is immaterial whether the mutual rights of the parties in this wall be referred to the condition in the deed executed in 1866 by the administrators of Samuel Hoskins or based on possession and user since its construction. If appellants take under the deed, they will be held to an acceptance of the reservation in it of the right to connect with their building. If, on the other hand, the rights of the parties rest on possession and user, it is certain that the use of the wall, as well as of the land covered by it, has been for a period of fifty years joint and mutual. Whether the deed be valid or not, it illustrates the nature and extent of the easement asserted and actually enjoyed by Hoskins and those holding under him, including appellee. However the rights of the parties in the wall were originally acquired, it must now be viewed and treated as a party wall.

Where one of the buildings supported by a party wall has been destroyed, and the wall itself has been so weakened as to be dangerous or insufficient as a support for the building which the owner of the destroyed building is about to erect, he has the right to tear down the insufficient or dangerous party wall and replace it with one stronger and better, provided he gives to the adjoining house the same right of support as it had in the old one. He is but exercising his legitimate rights of property. If it follows from this that the owner of the adjoining building will be put to inconvenience while the work of demolition and construction is going on, this is an unavoidable consequence attendant upon the adoption and use of party walls. It cannot be the law that the fortunate adjoining owner, whose building

is not destroyed, and who may be content with the wall, although weakened or partially destroyed, can, by refusing to the co-owner whose building has been destroyed permission to tear down and rebuild the wall, compel him either not to build again or to build only such a structure as the wall remaining may suffice to support. *Putzell v. Drovers & Mechanics' National Bank,* 78 Md. 349, 28 Atl. 276, 22 L. R. A. 632, 44 Am. St. Rep. 298.

While the adjoining owner, whose building has been destroyed and who wishes to tear down an insufficient or dangerous wall, and rebuild, will be accorded this right, it must be exercised so as to work no avoidable injury to the owner of the adjoining building   He will be liable if the work is done negligently and damage to the co-owner results therefrom.   The decree of the court below recognized this principle; but we do not think it was within the province of the court to go further and prescribe in detail the specifications according to which the work of tearing down and rebuilding should be conducted, or the precautions which should be taken.   The decree should have gone no further than to provide that complainants may, in the exercise of proper skill and due care to avoid injury to appellee, proceed with the work of tearing down and rebuilding the party wall, leaving the question as to what would constitute negligence to be controlled by the general principles governing that branch of the law.   However, since the specifications for the manner in which the work should be done, as set out in the decree, are those contained in the written offer of settlement made by the lodge, and since counsel for appellee concede that the specifications are unobjectionable, and only complain that a bond indemnifying against damage was not exacted, we will not disturb the decree because of this feature.   While the court doubtless had the power to have required the lodge to give a bond of indemnity to protect against damage resulting from the work, it was not reversible error to omit such requirement, especially as no spe-

cific demand was made for it in the pleadings, and it sufficiently appears that the lodge is solvent and responsible.

We are not prepared to say that the court erred, under all the circumstances, in taxing the costs equally against the parties.

The decree is affirmed on appeal and cross-appeal, and the costs of this court likewise taxed equally against the appellants and cross-appellants.                                     *Affirmed.*

