## COMMERCIAL NAT'L BANK OF OGDEN v ECCLES et al.

No. 2448.   Decided June 7, 1913 (134 Pac. 614).

1. PARTY WALLS—TERMINATION OF RIGHT—DESTRUCTION OF WALL. Where one has acquired an easement of support in a party wall, its accidental destruction determines the easement, and extinguishes all rights arising thereunder. (Page 98.)

2. PARTY WALLS—CONTINUANCE OF RIGHT—REMOVAL AND RECONSTRUCTION. Plaintiff, by purchase, acquired an easement for the support of its building to the height of three stories in a wall five stories high, standing wholly on defendant's land. Defendant's building was thereafter entirely destroyed by fire, leaving the wall standing and furnishing the same support to plaintiff's building as it did before, but not sufficiently strong to support the kind of building which defendant intended to erect on the same site. Held, that the plaintiff's easement had not terminated, that defendant had the right to remove the wall using ordinary care to avoid injury to plaintiff's building and to rebuild without unnecessary delay, provided he gave to plaintiff the same right of support in the new wall that he had in the old. (Page 98.)

FRICK, J., dissenting.

APPEAL from District Court, Second District; Hon. N. J. Harris, Judge.

Action for an injunction by the Commercial National Bank of Ogden against David Eccles and others.

Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*Richard & Boyd* for appellants.

*Valentine Gideon* and *J. G. Heywood* for respondent.

### STATEMENT OF FACTS.

This action was originally commenced against David Eccles, S. T. Whitaker, and Roy Sheedy to enjoin them from tearing down and removing a certain stone and brick wall situated along the south of defendant Eccles' land, which constituted the north boundary of the land and building owned by the plaintiff. During the pendency of the action on this appeal, David Eccles died, and the cause is continued in the name of his administrator. For the purpose of brevity and convenience, the name of Eccles will be used in this opinion instead of the administrator. It appears from the record that the other defendants have no interest in the subject-matter of the action other than as employees of the defendant Eccles; hence further reference will not be made to them.

The findings of fact made by the trial court, all of which are within the issues, are so far as material here, as follows:

"(2) That the defendant, David Eccles, is the owner and in possession of the following described real property situated in Ogden City, Utah, to wit: A part of lot seven (7), block twenty-five (25), plat 'A,' Ogden City survey, and further described as beginning at the northeast corner of said lot seven (7), running thence south along the west boundary of Washington Avenue 71.80 feet to the," etc.

"(3) That the plaintiff Commercial National Bank of Ogden, was and is the owner and holds the title to certain lands lying south of the land of the defendant, and that be-

tween such lands so owned by the plaintiff and the south boundary of defendant's land described in finding of fact No. 2 there is an intervening irregular strip of land which the plaintiff purchased from the defendant David Eccles in the year 1903, and paid to said defendant for said irregular strip of land the sum of $1894, and upon said strip of land the north side of the plaintiff's building was constructed and is situated.

"(4)   That along the south boundary of the premises described in the second finding of fact there is a stone foundation and a brick wall upon said foundation extending upward from the ground three stories; that said foundation is thirty-six inches thick, that the first story of said brick wall is thirty-two inches thick, and the two upper stories are twenty-eight inches thick. That the said wall is situated wholly upon the said ground belonging to the defendant David Eccles.

"(5)   That the plaintiff constructed its building upon its land immediately south of the said land of the said defendant David Eccles in the year 1903, and at that time, for the sum of $634.67 paid to the said defendant, the plaintiff purchased and became the owner of an easement in the foundation and brick wall situated along the south boundary of said defendant's premises from the basement to the center of the sills of the third story, and the said plaintiff has used said wall for the support and maintenance of its building situated on its said premises from the time of the construction of the same. That no interest in the wall and foundation other than the easement aforesaid, and no interest in the lands upon which said wall stands was purchased by the plaintiff from the defendant.

"(6)   That the joists supporting the roof and different floors of plaintiff's building situated upon its said land along the north side thereof rest upon and are supported by the wall on the south boundary of said defendant's land, and the steam and water pipes attached to and as a part of plaintiff's building are now attached to and placed in said wall, and were placed there at the time of its construction

under the rights granted to plaintiff by the said defendant,. and that the said wall, together with the openings for the joists and other supports and for the placing the steam and water pipes therein, are necessary for the support of plaintiff's said building, and are a part of said building, and the rights to have the joists and other supports, steam and water pipes placed in the north wall of said defendant's building belong to and are a part of the rights belonging to plaintiff's easement in and to said wall.

"(7)   That at the time of the construction of plaintiff's building on its said premises, and prior thereto, and since that date, up to and including the 15th day of November, 1911, there was situated upon the premises of the defendant David Eccles a five-story brick and stone building with a basement, and that the said building was on said 15th day of November, 1911, partially destroyed by fire, but that the walls of said building were left standing, and that the south wall was and is sufficient and ample for the support and maintenance of the plaintiff's building as constructed on its said premises.

"(8)   That the said five-story building on the lands of defendant has been twice wholly destroyed by fire, so that the walls alone were left.   That by reason of the action of said fires and the elements thereof said south wall has been so impaired and damaged that it is insufficient upon which to safely rebuild or to support such a building as was formerly situated and supported on defendant's land, and that same is insufficient to support such higher modern building as defendant proposes to erect on his land.

"(9)   That the plaintiff's building has no other or additional support along its north side, save the support of the said wall, and, that the taking out and removing of said wall would cause the plaintiff's building to fall, and become a mass of ruins.

"(10)   That the said defendant David Eccles is desirous of and intends to construct a new and more modern building upon his said land, and that the said south wall of said building is insufficient in its present condition to support

the building which the said defendant contemplates and is desirous of and intends to construct upon said premises, and that the said wall cannot be made sufficiently strong to support the contemplated building without great expense and without reinforcing same by taking additional space of the said defendant's premises, and for that reason the said defendant desires to remove and tear down the present wall along the south boundary of his said premises to make room for and permit the construction of the new building as aforesaid.

"(11)   That prior to the institution of this action the said defendant David Eccles served written notice upon the plaintiff of his intention to tear down and remove said wall, but without offering any easement or support in the new wall which he proposed to construct, or any protection or support to the plaintiff's premises by reason of the removal of said wall, and maintained and contended that the said plaintiff had no right or interest in the present wall, and should have no right or interest in the wall to be constructed.

"(12)   That all of said plaintiff's building is occupied by tenants, and that the Fred M. Nye Company hold the ground or first floor and basement under lease, and have therein an extensive and large stock of men's furnishing goods."

As conclusions of law the court found:

"(1)   That the plaintiff is the owner of an easement for the support of its building in the present wall situated on the defendant's premises along the south boundary thereof, and that the said plaintiff is entitled to a like easement and support and right in the wall to be constructed by said defendant over and along the south boundary of his said premises.

"(2)   That the defendant David Eccles is the owner of the said wall and the ground on which it has stood, subject only to the easement of support of the plaintiff in such wall, as stated in the findings of fact.

"(3) That said wall is insufficient to support another building of like kind as that destroyed, and insufficient to support such new and modern building as defendant proposes to erect, and that the defendant David Eccles is entitled to tear down and remove the wall situated along the south boundary of his said premises, exercising such due care and diligence in the prosecution thereof as will prevent injury to the plaintiff's premises.

"(4) That the said defendant will be required to replace said wall at his own expense with such new and stronger wall as will meet the requirements of his said new proposed building, and shall so construct the said wall so as to afford and give to the plaintiff the same easement, right, and support and use for its building in the said wall to be constructed as the plaintiff now has and enjoys in the present wall."

A judgment responsive to and supported by the foregoing findings of facts and conclusions of law was rendered in favor of plaintiff. The judgment, among other things, provides that "David Eccles is hereby permitted to remove the wall mentioned . . . at his own expense with due care so as not to injure plaintiff's building; . . . and the said plaintiff is hereby adjudged and is hereby awarded the same rights, easement, and support in the wall to be constructed by said defendant, David Eccles, and the south boundary of his premises as plaintiff now has and enjoys in the present wall." To reverse the judgment, defendants appeal.

McCARTY, C. J. (after stating the facts as above).

One of the grounds upon which appellants ask for a reversal of the judgment is that the findings of facts are not supported by the greater weight of the evidence. We do not deem it necessary to a clear understanding of the questions presented for us to either review the evidence in detail or set forth the substance thereof. We think it is sufficient to here state that we have carefully examined the record; and, while we find that there is a conflict in the testimony of some of the

witnesses on certain issues, we are of the opinion that the findings of fact are supported by a clear preponderance of the evidence. The wall in question is entirely upon the land of appellant Eccles, and, as found by the court, respondent has "no interest in the lands upon which said wall stands." There is much evidence, however, which tends to show that respondent purchased an interest in and became part owner of the wall up to the third story thereof. But since the court found that respondent acquired an easement only in the wall, and as respondent has not appealed or filed a cross-assignment of errors, we shall, for the purposes of this appeal, assume that respondent acquired no greater property right in the wall than an easement.

The important question, therefore, is: Did respondent's right to an easement in the wall terminate when the wall was rendered useless to appellant Eccles by the destruction of his building of which the wall formed a part? The position of appellants on this question is clearly stated by their counsel in their printed brief as follows: The purposes of the wall were "to support mutually two buildings, one of five stories and the other (respondent's building) of two stories. The rights of the adjoining owners therein were mutual, a cross-easement, each with the right to have its building supported. When from calamity or accident such wall became useless for either of these mutual purposes, the condition or relation ceases. The purposes were gone." And again they say: *"The destruction of a party wall for the purpose for which it was used during the easement attaching thereto ends the easement and all rights thereunder."* Respondent acquired by purchase from appellant an easement in the wall up to the third story thereof, and has used the same as the north wall of its building. The joists of respondent's building are fastened to and rest on the wall.

The authorities practically all agree that, where a party has acquired an easement of support in a party wall, the accidental destruction of the wall terminates the ease-

ment and extinguishes all rights arising thereunder.    **1, 2**
Therefore, if the wall in question had been ren-
dered useless or unsafe as a support to respondent's build-
ing, or if it had been entirely destroyed by the fire, it
might be argued with much force that such impairment
or destruction terminated the easement.  But this case does
not fall within this well recognized rule.  Under existing
conditions respondent's easement—property right—in the
wall is just as valuable' and available as a support to its
building as it was before the destruction of appellant
Eccles' building.  The question therefore arises:  May
Eccles, because of the destruction by fire of his building
which so weakened the wall that it cannot be retained and
used as a support for the kind of building he contemplates
erecting on the site of the one destroyed, deprive respond-
ent of· its property, easement, in the wall which furnishes
the same support to its building as it did before the fire oc-
curred ?  To permit Mr. Eccles to tear down the wall and
remove this support from respondent's building without re-
quiring him, at his own expense, to erect another wall in its
place, and thereby provide the same support for respond-
ent's building as the present wall furnishes, would in effect
be a confiscation of respondent's property.

It does not follow because the wall is unsafe as a sup-
port for the kind of building appellant Eccles intends to
erect that he has the right to terminate respondent's ease-
ment of support therein for its building, and proceed to
take down and remove the wall to the irreparable damage
of respondent.  That Eccles has the right to remove the
wall and erect another in its stead suitable for the building
he contemplates erecting no one will deny, but in doing
so he is bound to use ordinary care to avoid injury to re-
spondent's building and to rebuild without unnecessary de-
lay.  (*Putzel v. Drovers' etc., Bank,* 78 Md. 349, 28 Atl.
276, 22 L. R. A; 632, 44 Am. St. Rep.  298; *Lexington
Lodge v. Beal,* 94 Miss. 521, 49 South. 833.)  In the case
last cited the principle of law applicable to the case at bar .
is well illustrated in the following language:

"Where one of the buildings supported by a party wall has been destroyed, and the wall itself has been so weakened as to be danderous or insufficient as a support for the building which the owner of the destroyed building is about to erect, he has the right to tear down the insufficient or dangerous party wall and replace it with one stronger and better, provided he gives to the adjoining house the same right of support as it had in the old one. He is but exercising his legitimate rights of property. If it follow from this that the owner of the adjoining building will be put to inconvenience while the work of demolition and construction is going on, this is an unavoidable consequence attendant upon the adoption and use of party walls. It cannot be the law that the fortunate adjoining owner, whose building is not destroyed, and who may be content with the wall, although weakened or partially destroyed, can, by refusing to the co-owner, whose building has been destroyed, permission to tear down and rebuild the wall, compel him either not to build again or to build only such a structure as the wall remaining may suffice to support. * * * While the adjoining owner, whose building has been destroyed, and who wishes to tear down and rebuild an insufficient or dangerous party wall, will be accorded this right, it must be exercised so as to work no avoidable injury to the owner of the adjoining building. He will be liable if the work is done negligently and damage to the co-owner results therefrom."

See, also, 30 Cyc. 781, 782.

The judgment is affirmed, with costs to respondent.

STRAUP, J.

I concur. The plaintiff, for a valuable consideration, purchased an interest, not in the defendant's building, but a portion of the south wall of his building five stories high. The portion of the wall in which such interest was purchased was but three stories high, and in length that of plaintiff's building. It was purchased to furnish the north wall for its building three stories high, and to support the north side of it. True, it purchased no interest in the soil. But the interest purchased in the wall and the purpose for which it was purchased necessarily gave the plaintiff an interest also in the soil upon which the wall rested, so long as it remained and was suitable for such purpose. Such interest was perpetual and unconditional. The defendant's building was injured by fire. The south wall was injured to such an extent as not to be sufficient, as found by the court,

to support a building as was formerly supported on the defendant's land or such a building—ten or eleven stories high—as the defendant proposes and intends to erect. But that portion of the wall in which the plaintiff for a valuable consideration purchased an absolute and perpetual inter est was not materally injured, and is sufficient to safely and properly support the plaintiff's building in the future as it did in the past, and for such uses and purposes is substantially as good now as it was before. That interest, that use, that purpose—the thing bought, the thing sold and for which the plaintiff paid its money—was not destroyed or materially impaired. The plaintiff still has what it had bought and what the defendant had sold. That the wall was damaged or impaired for other purposes is the defendant's misfortune. The plaintiff is not to blame for that, nor should it be charged with it by compelling it to surrender that which it bought and paid for and still owns and possesses. Observations are made that the defendant should not suffer the whole loss occasioned by the accidental fire. Every one under such circumstances must bear his own loss. What the plaintiff suffered in such respect it must bear. So, too, must the defendant. The plaintiff with respect to the question in hand suffered none, for it still has about all it had before the fire. That the defendant has not is his, not the plaintiff's loss. And for this reason do I see a distinction between the case here and one where had the wall been wholly destroyed or damaged, or that portion of it in which the plaintiff has an interest. For, in the latter, the interest of the plaintiff as well as that of the defendant would be destroyed or damaged. The thing in which they both had a common interest would no longer exist or be useful to either. But they had no common interest in the whole wall. The common interest was only to the extent of three stories and the length of plaintiff's building. That was all the defendant sold and all the plaintiff bought. Above or beyond that, the defendant granted, and the plaintiff acquired, no interest. The thing so bought and sold and the purpose for which it was

bought and sold was unrestricted and unconditional. Of course, they had the right to make their own bargain; but that is the bargain made by them. So above or below the third story, wind may blow and fire rage, but if they do not damage or impair what the defendant sold and granted, and what the plaintiff unconditionally bought and paid for and still possesses and enjoys, I see no reason why it should be compelled to surrender it because the defendant sustained a loss of property in which the plaintiff was given and had no interest whatever. Then it is also said that, if the plaintiff is permitted to use the new wall for the same purpose it used the old, it is granted or given something without consideration. Not so. It now has what it theretofore bought and paid for. The wall, for that purpose, is substantially as good now as it was before the fire. It, however, is not sufficient to support such a building as the defendant proposes and intends to erect. So the court, under its equitable powers, and as is proper, has given the defendant the right to remove it if he will erect another and give back to the plaintiff what he, by tearing down and removing the old wall, will take from the plaintiff. Thus, the surrender of what the plaintiff now has, and what it had theretofore bought of the defendant and now owns, possesses, and enjoys, is the consideration for requiring the defendant, if he takes down and removes the old wall, to erect a new one and give the plaintiff that right and interest in it which it owned, possessed, and enjoyed in the old wall at the time of its removal by the defendant. That is but equity, and is, I think, within the adjudged cases.

FRICK, J, (dissenting).

I regret my inability to agree with the conclusions reached by my associates. I cannot do so for the reason that, if the judgment in this case becomes the settled law in this jurisdiction, much unnecessary litigation as well as much injustice must inevitably result between the owners of adjoining buildings, one of which, as in this case, is made uninhabitable through its destruction by fire. My asso-

ciates base their conclusions entirely upon the one fact found by the court that the wall in question was not entirely destroyed by the fire, but that a portion sufficient for the purposes of respondent was left standing, although such portion is entirely useless as a wall for the proposed building which appellant intends to erect, or for a building similar to the one that was destroyed. It is conceded upon all sides that the wall in question stands entirely upon the land of appellant; that the respondent never had nor now has any interest in the soil on which the wall rests; and that, if it has any rights whatever, it is merely an easement in the remaining wall, and nothing more. It is also conceded that appellant's building was accidentally destroyed by fire, and that the remaining walls are wholly insufficient to support another building, and are therefore practically useless to him. My associates also concede, stating the fact in their own language:

"The authorities practically all agree that, where a party has acquired an easement of support in a party wall, the accidental destruction of the wall terminates the easement, and extinguishes all rights arising thereunder."

In view of this concession, so frankly stated, I need not refer to the authorities upon the subject. They, however, seek to exclude this case from the consequences stated above for the reason, they say, that the remaining wall is just as valuable and available as a support to its (respondent's) building as it was before the destruction of appellant Eccles' building. In this statement, therefore, is contained the theory upon which my associates approve the judgment of the court below. This theory in my judgment is wholly fallacious. By the enforcement of it the loss occasioned by the fire is placed wholly upon appellant, and the respondent is permitted to escape from the consequences thereof, although it is conceded that appellant's building, as such, and his walls for every purpose that he could use them for walls, are destroyed. Moreover, it is in effect held that, while respondent had a right or easement in the building that was destroyed by fire, it nevertheless has sustained no loss. From

such holding it follows that if the wall in question had suffered greater destruction, or if it had been entirely destroyed, then respondent's rights or easement thereunder would have been extinguished. From this I am authorized to assume that if respondent had been so unfortunate as to have its building destroyed-by the fire in question, or by another, it would have lost all right to join another building to any new building that appellant might choose to erect, but since it had the good fortune not to lose all therefore it has lost nothing, and appellant must not only stand the whole loss, but in case he chooses to improve and use his own property by erecting thereon a suitable building he must yield a portion thereof to the use of respondent without any consideration whatever. I say without consideration since it must be conceded that all respondent purchased was an easement in one of the walls of appellant's building, and when that building was destroyed the easement, in my judgment, was also destroyed. If this be true, how can respondent claim a right in an entirely different wall from that in which it purchased the easement? It seems to me that the fact which in my judgment is controlling is entirely overlooked. This fact is that respondent acquired an easement in a wall only while it was and continued to be a part of a building, and that when the wall from any cause over which the appellant had no control was so affected that it no longer was fit to support the building of which it was a part, so that the building ceased to exist, then the wall must also be held to have ceased to exist for the purposes of the easement. When, therefore, the building was destroyed, the wall for all practical purposes was also destroyed, and hence the easement in the language of my associates was extinguished.

If respondent desires to obtain an easement for all time in any building that appellant might erect in place of the old one, if that should be destroyed, it should have entered into a contract to that effect. Would any one familiar with the record in this case seriously contend that the respondent could have obtained what my associates now hold it did ob-

tain for the amount it paid for the alleged easement in the old wall, namely, an easement in a new wall which may continue for an indefinite period, or for so long as the building may last, and, if the old walls happen to continue to stand, that the easement would continue for all time?

But it is contended that, if respondent is not permitted to attach its building to the new one, it means a practical confiscation of its property rights in the remaining wall. This assumes that the respondent acquired a right in a wall which continued after it had been destroyed to such an extent that it could no longer be used as appellant's building, or as a part of any new one he might erect upon the ruins of the old. Respondent is thus given a right in a thing that has ceased to exist for the purposes contemplated by the parties when the easement was acquired, and has ceased to exist for every purpose except a pile of brick or stone and mortar which by accident, merely, is left large enough to answer the purpose of respondent, although it answers no other purpose whatever. The mere fact that the wall has to be removed by the wrecker instead of having been consumed by the fire cannot change its character either as a matter of fact or as a matter of law. Nor can any amount of words make that a wall which merely constitutes the debris of a ruined building. Neither was it contemplated by the parties that it should be so. The fact that the respondent now claims that the wall is sufficient for its purpose is the result of mere accident and is not based upon any contractual rights. For the purposes of the easement the wall was destroyed when it no longer could be used as a part of appellant's building or as a part of any building he might choose to erect. Had appellant willfully destroyed the building, or torn it down for the purpose of erecting another, with the intention of preventing the respondent from using the wall, the conclusion reached by my brethren might be justified. Under the undisputed facts in this case the conclusion reached, in my judgment, is not only unsound, but it takes from one and gives to another that which the court has no right to take or grant. In my judgment adjoining own-

ers should be permitted to make their own arrangements, if they can, with respect to the rights one may obtain in the property of the other.

The judgment should therefore be reversed and the action dismissed.