## CITY OF ATLANTA *v.* SMITH.

GILBERT, J.  1. The rulings of the Supreme Court on questions of law, upon the interlocutory order of the trial judge granting an injunction, become the law of the case in so far as the case depends upon such questions of law. *Ingram* v. *Trustees of Mercer University*, 102 *Ga.* 226 (29 S. E. 273); *Allen* v. *Schweigert*, 113 *Ga.* 69 (38 S. E. 397); *Western &c. R. Co.* v. *Third Nat. Bank*, 125 *Ga.* 489 (54 S. E. 621); *Southern Bell Telephone &c. Co.* v. *Glawson*, 140 *Ga.* 507 (79 S. E. 136); *Georgia Railway &c. Co.* v. *Decatur*, 153 *Ga.* 330 (2) (111 S. E. 911); *Towers* v. *City Land Co.*, 159 *Ga.* 486 (125 S. E. 837); Civil Code (1910), § 4336.

2. The principle in the decision may be reviewed and overruled in another case between different parties, but as between the parties the decision stands as the law of the case. *Southern Bell Telephone &c. Co.* v. *Glawson*, supra, at page 509, and cit. We are satisfied with the correctness of the decision of this case when it was formerly here, and the request to review and overrule the same is therefore refused.

*Judgment affirmed. All the Justices concur.*

No. 5845. NOVEMBER 15, 1927.

Equitable petition. Before Judge Humphries. Fulton superior court. January 7, 1927.

---

Appeal and Error, 4 C. J. p. 1093, n. 77; p. 1095, n. 78; p. 1096, n. 81; p. 1097, n. 98.

This is the second appearance of this case in this court. *Smith*
v. *Atlanta,* 161 *Ga.* 769 (132 S. E. 66). The first bill of excep-
tions was to the refusal of the court to enjoin the City of Atlanta
from enforcing a zoning ordinance. On the first hearing an in-
terlocutory injunction was refused, and that judgment was re-
versed by this court upon the facts as will be found reported in
the case cited above. On the new hearing in the court below, the
pleadings being the same, affidavits were introduced by plaintiff to
the effect that the property involved, and which had been zoned
by the city for residential purposes, "is excellently adapted to be
used for a large number of business purposes; that it would make
an excellent location for warehouse businesses, . . because the
presence of the railroad would permit the loading and unloading
of freight without expense, delays, and trouble of cartage," that
"said property is badly located as a site for residences; the
presence of a railroad is detrimental as a site for residential prop-
erty; the value of said property of Mrs. Corinne S. Smith would
be at least three times as great if it is utilized as a site for a
business establishment than it would be if used as a site for
residences." Plaintiff's own affidavit set out that "the contour of
said property further makes this property especially valuable. The
Southern Railway, at this point, is approximately 25 feet lower
than Piedmont Avenue [the thoroughfare on which the property
is located], so that a business structure, with two full stories, each
clearing 12 feet, could be built below the level of Piedmont Avenue
and served by the side-track of said railway company, and still
affiant would be able to build stores along Piedmont Avenue,
fronting the street level, and with as many stories above Pied-
mont Avenue as might be expedient. In effect, the peculiar loca-
tion of affiant's property would permit the ground area to be used
by affiant and her tenants for a dual purpose, namely, warehouses
with a railroad, frontage and entrances from a prominent city
street, served by street cars, and for stores along said street;" that
at the time plaintiff bought said property "a man was and still
is" there conducting a store business; that stores were in fact
being operated no more than 250 feet from her property; that
plaintiff purchased a part of said property before the city's zon-
ing law was passed; that said property was rezoned for residences
while she was out of the city; that on her application the zoning

commission approved the zoning of said property again for business purposes, but that the city council refused to ratify the same; that the property was vacant save a small store paying only $35 a month rent, and "that said property is of little or no value if its use is confined to residential purposes alone;" that a building permit was refused her for four stores by the city's building inspector, but she, on advice of counsel, started erecting them anyhow; and that after some of the material was placed and some of the work begun, she was served with a summons to appear before the city recorder to answer for a violation of an ordinance against erecting buildings in the city without a permit.

The defendant introduced affidavits by property-owners in the section affected, some of them adjacent to plaintiff's property, tending to establish that the building of stores by plaintiff there would materially decrease the market value of their property which had long been considered residential only and built up as such, and "one of the most desirable resident sections of the city;" that when plaintiff sought to get her property rezoned for business purposes, it was opposed by practically every resident and property-owner affected by such change; that erection of stores by plaintiff on said property "would change the character of the neighborhood and greatly damage same as a residential section and reduce the values of all residential property in that section;" that "the greater part of Mrs. Corinne S. Smith's property, especially the southern part thereof, is well adapted for residential purposes and said land lies so that it can be built up with residences like the other surrounding property;" and that "Mrs. Smith's property will not be confiscated if limited to residential purposes, but the other property in said subdivision will be confiscated if the near-by Smith lot is improved with stores," as this would be the start of a chain of stores in the section.

The court directed the jury to return a verdict granting a perpetual injunction against the city's enforcing the ordinance plaintiff complained of. The defendant excepted upon the general grounds, and because "the court apparently proceeded upon the line that the Supreme Court of Georgia, on bill of exceptions filed on order refusing temporary injunction, had reversed the lower court and held the zoning law and ordinance passed thereon unconstitutional, but the City of Atlanta submits that since this

decision has been rendered the Supreme Court of the United States has held to the contrary; and as the provisions of the two constitutions on the points involved are practically [the same], the decision of the Supreme Court of the United States is controlling, and the Supreme Court of Georgia on a review of its former decision would and should so hold;" and that the constitutional questions raised by plaintiff in her petition were not involved in the case.

*J. L. Mayson* and *C. S. Winn,* for plaintiff in error.

*Spence & Spence,* contra.

GILBERT, J., specially concurring. Since the decision of the case when it was formerly before this court, the Supreme Court of the United States decided the case of Village of Euclid *v.* Ambler, 272 U. S. 365 (47 Sup. Ct. 114, 71 L. ed. 303). Counsel for plaintiff in error urge upon us that, on account of the decision in that case, this court should reverse its ruling in this case. Counsel also point out a change in the rules and practice of taking cases to the Supreme Court of the United States, and insist that the reasons for following the rulings of the Supreme Court of the United States are now more urgent and compelling upon this court, even when strictly and technically such rulings are not controlling. The U. S. Supreme Court itself declared, in Barbier *v.* Connolly, 113 U. S. 27, 30 (5 Sup. Ct. 357, 28 L. ed. 923), that its jurisdiction in such cases as this "is confined to a consideration of the Federal question involved, which arises upon an alleged conflict" with the constitution of the United States. Due, however, to our high regard for the strength and wisdom of its decisions, this court should follow that court not only when such decisions are controlling but also when by their reasoning and logic they furnish us with persuasive authority. We should decline to follow in cases not on Federal questions and where we can not bring our minds to accept the reasoning. Our constitution declares: "Legislative acts in violation of this constitution, or the constitution of the United States, are void, and the judiciary shall so declare them." Article 1, section 4, paragraph 2, Civil Code (1910), § 6392. This mandate we are sworn to obey. In the Euclid case the trial court in Ohio had rendered a decision to the effect that the restricting ordinance was unconstitutional; that is, that it was in conflict with the fourteenth amendment to

the Federal constitution; that it denied equal protection of the law; and that it offended against certain provisions of the constitution of the State of Ohio. The Supreme Court of the United States held that the ordinance was not in conflict with said amendment, and did not deal with the question whether it was contrary to said State constitution. Although the provisions of the two constitutions were substantially the same, the decision of the United States Supreme Court under its own proper view of its jurisdiction was controlling only on the question of conflict with the Federal constitution. The case was decided on its own facts, which were in some respects widely different from those of the case now before us. Construed in connection with the facts of the two cases, the Euclid case in no substantial respect denies the principles announced by us in the *Smith* case. In the Euclid case the question arose on the threatened exclusion of industrial plants from the restricted area. This obviously includes industrial plants of all kinds, industries generally recognized as nuisances per se, those which admittedly may be declared nuisances, as well as those which in their nature are not subject to such classification. The court stated that it dealt with the "general scope and dominant features" of the ordinance, "leaving other provisions to be dealt with as cases arise involving them."

The Supreme Court, in the Euclid case, said: "It is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, so far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases arise directly involving them. And this is in accordance with the traditional policy of this court. In the realm of constitutional law, especially, this court has perceived the embarrassment which is likely to result from an attempt to formulate rules or decide questions beyond the necessities of the immediate issue. It has preferred to follow the method of a gradual approach to the general by a systematically guarded application and extension of constitutional principles to particular cases as they arise, rather than by out of hand attempts to establish general rules to which future cases must be fitted."

In this case the owner proposed to erect a retail store. I can not imagine every ordinary retail store as a nuisance per se or subject to be so declared in every conceivable location. Under the

undisputed evidence in this case, I think the unbiased mind must conclude that the zoning ordinance with respect to the property concerned was unconstitutional and void. Each case must be decided on its own facts. In the decision when the case was previously here there are broad statements of principles, some broader than the precise case required. The decision should be construed to be based on its own facts and to extend no further. In the opinion, at page 799, it was stated: "In holding that the enabling act of our General Assembly, and the ordinance passed by the City of Atlanta in pursuance of that act, are unconstitutional and invalid, we do not mean to hold nor to intimate that the entire act or the entire ordinance is invalid; we confine our ruling to the holding that so much of the ordinance, and so much of the act as authorized that ordinance, as makes it unlawful to erect a store in a residential section set aside under the zoning law is unconstitutional and invalid. Both the act of the General Assembly authorizing the zoning, and the ordinance providing for zoning of the city, are elaborate in the statement of their purposes, and the provisions of that act and that ordinance, except in so far as they deal with the subject of erecting houses of the character especially under consideration, are not involved here and their constitutionality is not passed upon."