20557. FORSYTH CORPORATION *v.* RICH'S, INC., *et al.*

ARGUED JULY 14, 1959—DECIDED SEPTEMBER 11, 1959—
REHEARING DENIED OCTOBER 9, 1959.

*Johnson, Hatcher, Meyerson & Irvin,* for plaintiff in error.
*Mitchell, Clarke, Pate & Anderson, Stephens Mitchell, Joel Parker, Parker & Parker, Benjamin M. Parker,* contra.

MOBLEY, Justice. ■ There is no merit in the motion of the defendants in error to dismiss the bill of exceptions.

An assignment of error upon the grant of an injunction, that the judgment or decree rendered was contrary to the law and the evidence or contrary to the law or contrary to the evidence

is sufficient. *Anderson* v. *Newton,* 123 *Ga.* 512 (1) (51 S. E. 508); *Kirkland* v. *Atlantic & B. R. Co.,* 126 *Ga.* 246 (1) (55 S. E. 23); *City of Bainbridge* v. *Jester,* 157 *Ga.* 505, 511 (121 S. E. 798, 33 A.L.R. 1406).

■ The record does not contain a transcript of evidence taken at the interlocutory hearing, which lasted for three weeks, but the bill of exceptions does contain the evidence pertinent to a decision in this case; and the judge in his order makes several findings of fact upon which he makes certain rulings of law which formed the basis for his order temporarily enjoining the Forsyth Corporation, as set out above. The plaintiff in error concedes that no conflict exists in the material evidence, accepts the findings of fact made by the court as correct, and states that the assignments of error are to errors of law and that an adjudication of the questions of law presented will determine the case. *Washington Nat. Ins. Co.* v. *Mayor &c. of Savannah,* 196 *Ga.* 126 (1) (26 S. E. 2d 359); *Sirota* v. *Kay Homes,* 208 *Ga.* 113 (1) (65 S. E. 2d 597); *Danielsville &c. Tel. Co.* v. *Sanders,* 209 *Ga.* 144, 145 (1) (71 S. E. 2d 226). Although the trial judge in his order stated that the determinations made by him as to the rights of the parties did not have the consequences of a final judgment, but were made solely for the purpose of arriving at a proper interlocutory judgment, where, as here, the plaintiff in error agrees that there is no controversy as to the material facts and accepts the findings of fact by the trial judge, his rulings on questions of law upon which he based his decree will be reviewed by this court, and the rulings thereon will constitute a final adjudication of such questions. *City of Atlanta* v. *First Methodist Church,* 83 *Ga.* 448 (10 S. E. 231); *Ingram* v. *Trustees of Mercer University,* 102 *Ga.* 226 (29 S. E. 273); *City of Atlanta* v. *Smith,* 165 *Ga.* 146 (140 S. E. 369); *Elyea, Inc.* v. *Cenker,* 184 *Ga.* 179 (190 S. E. 585); *Dollar* v. *Fred W. Amend Co.,* 189 *Ga.* 654 (7 S. E. 2d 258).

■ (a) The first question presented is, does Rich's have an easement in the west wall of the Forsyth building? Prior to 1892, J. W. Rucker owned a one-half undivided interest in the vacant lot (where Rich's building was subsequently erected), west of the Forsyth building property. On July 6, 1892, R. F.

Maddox by deed conveyed his one-half interest in the vacant lot (now the Rich's property) to J. W. Rucker, thereby vesting full title in Rucker. By this deed, it was further provided that conveyance was also made of "the privilege of joining to the western wall of the building occupied by said Maddox-Rucker Banking Company [the Forsyth building] in the erection of any building by said grantee, his heirs or assigns, and with the agreement that the ten feet of ground across the rear of the lot are to be kept open by said grantee, his heirs or assigns, for purposes of air and light for the benefit of this and adjoining property." The deed contained general warranty provisions. At the time of the execution of this deed, Maddox did not own the property on which stood the Forsyth building, the west wall of which he had granted Rucker the right to tie on to, but he did acquire title to the property twelve days later, on July 18, 1892. Sometime later, this vacant lot (the Rich's property) was improved with a three-story and basement building, which is now located thereon and which was joined to the western wall of the Forsyth building up to its two-story height, and the third-story wall was built on top of the wall of the Forsyth building.

The court in this connection found: "As a result of this joining by Mr. Rucker of his building to the western wall of the bank building for more than fifty years prior to the fire of September, 1958, the eastern wall of the building on the Rich's lot and the western wall of the building on the Forsyth Corporation lot were one and the same, and the Rucker or Rich's building during all that time, and up until the fire, was afforded the following uses:

"(a) The wall served the Rich's building and property as an inclosure wall and to give such support as is incident thereto. (b) The wall served as such inclosure wall of the third story of the Rich's or Rucker building, for when it was erected the third story of that building was placed on top of the second-story western wall of the bank building. (c) The air shaft of the Rucker-Rich's building and the beams and girders supported by the air shaft received support. Both the north and south sides of the air shaft received support from being bonded into the third-story wall. (d) Both the north and south walls of

the Rucker or Rich's building received support from being bonded into the said third-story wall. (e) The roof of the Rich's or Rucker building received support where it is tied into said third-story wall."

The deed under which Rich's held conveyed an easement running with the land in the west wall of the Forsyth building, and at the time of the fire Rich's was the owner of the easement. The word "privilege" as used in this grant did not show any intention to make the right personal merely by creating an appurtenance to the land which passed to Rich's from the original grantee. *Stovall* v. *Coggins Granite Co.*, 116 *Ga.* 376, 380 (42 S. E. 723). "To constitute a covenant running with the land, the covenant 'must have relation to the interest or estate granted, and the act to be done must concern the interest created or conveyed.' 1 Ballard, Real Prop. § 491. In 2 Kerr on Real Prop. § 1218 . . . 'A covenant runs with the land when either the liability for its performance or the right to enforce it passes to the assignee of the land itself. In order that it may run with the land, its performance or non-performance must affect the nature, quality, or value of the property demised, independent of collateral circumstances, or it must affect the mode of enjoyment, and there must be a privity between the contracting parties.' " *Atlanta Consol. St. Ry. Co.* v. *Jackson*, 108 *Ga.* 634, 638 (34 S. E. 184). Furthermore, Rich's and its predecessors in title have openly, notoriously, continuously, and uninterruptedly for more than fifty years used the east wall of the Forsyth building for the purposes outlined above in the trial judge's order, and by reason thereof have been vested by prescription with an easement of support from the west wall of the Forsyth building as well as an easement in the annexed wall on top of the west wall of the Forsyth building. " 'Where a wall between adjoining buildings has, during at least the prescriptive period, usually twenty years, been continuously and uninterruptedly used as a party wall by the respective owners, such wall becomes a "party wall" within the legal meaning of the term, or, at least, a right of easement arises to use it as such, even though the wall stands wholly on the land of one of the adjoining owners . . .' The general rule . . . that after long user without

material objection or interruption a grant of the right will be presumed, has been recognized in Georgia. *Habersham* v. *Savannah & Ogeechee Canal Co.*, 26 *Ga.* 665. And the Georgia Code, § 85-409, expressly declares that an incorporeal right (easement) may be acquired by prescription." *Joel* v. *Publix-Lucas Theatres,* 193 *Ga.* 531, 537 (19 S. E. 2d 730), quoting general rules stated in 47 C. J. 1329, et seq.

The trial court held that the "easement, with the rights of enclosure and support, above referred to in favor of the property of Rich's, Inc., survived the fire and was not destroyed thereby." The court found that the Forsyth building was destroyed by fire and was no longer usable as a building and that, even though the west wall of the building was damaged by fire and was in need of some repair, such damage was not sufficient to impair its capabilities for rendering to Rich's the uses enumerated by the court set out above, and in fact it was at the time of the trial as serviceable to Rich's as at any time before. " . . . the owner of one of the buildings supported by a party wall retains his easement after the other building is destroyed if the wall itself is not destroyed but continues to stand in support of his building. This is true notwithstanding the wall is situated entirely on the premises of the owner of the destroyed building." 40 Am. Jur. 493, § 14. " . . . the destruction or demolition of one of the buildings, without destroying or demolishing the wall does not extinguish the easement." 69 C. J. S. 9, § 11 (b). The above-stated principles are supported by the rulings made in *Simmons* v. *Hall,* 180 *Ga.* 492 (179 S. E. 98), and *Joel* v. *Publix-Lucas Theatres,* supra. See also Brondage *v.* Warner, 2 Hill 145 (N. Y.), and Commercial Nat. Bank *v.* Eccles, 43 Utah 91 (134 P. 614, 46 L.R.A. (NS) 1021, Ann. Cas. 1916 C 368), where the Supreme Court of Utah held that an easement in a party wall is not destroyed by the destruction by fire of the owner's building, which so weakens the wall that it cannot be used for the purposes desired by the owner (which is the case here) if it remains sufficient for the purposes of the easement; and Bonney *v.* Greenwood, 96 Me. 335 (52 A. 786), where the Supreme Court of Maine stated this rule of law: "It is among the essential qualities of every ease-

ment that there are two distinct tenements or estates, the dominant, to which the right belongs, and the servient, upon which the obligation is imposed. Hence an easement, properly so-called, may survive the destruction of a part of the servient estate when there is anything remaining upon which the dominant estate may operate." In this case, Rich's, Inc., holds the dominant estate, and Forsyth Corporation the servient. Since the party wall in this case was not destroyed by the fire and still furnishes Rich's the same uses and services as before the fire, we are of the opinion that Rich's easement survived the fire. Rich's held fee simple title to the easement by grant as well as by prescription, having used the wall and having been in possession of it for more than fifty years. Rich's was not responsible for the fire or for the destruction of the Forsyth building. As stated by the court, "No question is here presented as to whether the easement would have survived a total destruction of the common wall or such damage to the common wall as materially impaired its capability to serve its ordinary uses of inclosure and support of the Rich's building."

The court further found that the wall was in need of repair, that Rich's had the right to make needed repairs, and that it might enter upon the land of Forsyth Corporation, where necessary, for the purpose of making needed repairs to the common wall. The court cited in support thereof the following from Restatement of the Law, Property Servitudes, § 485, Comment (c): "In the absence of provisions to the contrary in a conveyance creating an easement, it will be assumed that the conveyee is given, as incidental to it, the privilege of so maintaining and repairing the premises subject to it as to enable him effectively to make the uses authorized by it. This privilege to maintain and repair is subject in turn to the limitation that the privilege must be exercised in a reasonable manner." While we are of the opinion that this is a correct statement of the law governing this situation, it appears in the record that, prior to the tender of the bill of exceptions in this case, the wall had been repaired by Rich's. The question is therefore moot. See *Taylor* v. *Justice*, 168 *Ga.* 482 (1) (148 S. E. 274); *Major* v. *City of Atlanta*, 198 *Ga.* 303 (2, 3) (31 S. E. 2d 727); *Fountain* v. *Grant*, 211 *Ga.* 62 (1) (84 S. E. 2d 61).

■ For reasons set out in (a), (b), and (c) above, the trial judge did not err in granting the interlocutory injunction enjoining Forsyth Corporation from tearing down its west wall and in enjoining it from interfering with Rich's in making necessary repairs to the wall and in going upon its land, where necessary, to make said repairs.

■ The court further ruled that, "If Forsyth Corporation wishes, it has the right, not to destroy the wall, but to take the wall down for the purpose of replacing it with another wall on the same location of equal or greater strength, affording to Rich's, Inc., the same easement as it has in the present wall and the uses of inclosure and support above referred to." "The possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance." Restatement of the Law, Property Servitudes, § 486. "Where one of the buildings supported by a party wall has been destroyed, and the wall itself has been so weakened as to be dangerous or insufficient as a support for the building which the owner of the destroyed building is about to erect, he has the right to tear down the insufficient or dangerous party wall, and replace it with one stronger and better, provided he gives to the adjoining house the same right of support as it had in the old one. He is but exercising his legitimate rights of property. If it follows from this that the owner of the adjoining building will be put to inconvenience while the work of demolition and construction is going on, this is an unavoidable consequence attendant upon the adoption and use of party walls. It cannot be the law that the fortunate adjoining owner, whose building is not destroyed, and who may be content with the wall, although weakened or partially destroyed, can, by refusing to the co-owner, whose building has been destroyed, permission to tear down and rebuild the wall, compel him either not to build again or to build only such a structure as the wall remaining may suffice to support." Lexington Lodge, No. 24, F. & A. M. v. Beall, 94 Miss. 521 (49 So. 833). See also Putzell v. Drovers' and Mechanics' Nat. Bank, 78 Md. 349 (28 A. 276, 22 L. R. A. 632, 44 Am. St. Rep. 298) ; Commercial Nat. Bank v. Eccles, 43 Utah 91, supra; Mary Jane Stevens

Co. *v.* First Nat. Bldg. Co., 89 Utah 456 (57 P. 2d 1099). The ruling in the Mississippi case is a sound statement of the law, and the authorities are uniform in its support. The court properly held that Forsyth Corporation could tear down the wall and build a new one, furnishing Rich's the same easement in the new wall as it had in the old one.

The court in its order further provided that, ". . . if Forsyth Corporation should desire to take down the present wall, not for the purpose of destroying it, but for the purpose of re-placing it on the same location with a wall of equal or greater strength, affording to Rich's, Inc., the same uses as those afforded by the present wall, it should be permitted to do so, and, if such be the election of Forsyth Corporation, it is the order of the court that, upon the filing of a writing in this court so stating and setting forth that such building permits as are required by public authority have been obtained, the court will pass an appropriate order in the premises making such terms and con-ditions as may seem appropriate and just to both parties."

Forsyth Corporation filed its declaration of intention to tear down the walls as permitted by the court; but the court in an order dated March 11, 1959, refused to issue an order dissolving the temporary injunction granted in its order of February 19, 1959, and permitting Forsyth Corporation to tear the walls down, giving as the reason that Forsyth Corporation in its declaration did not set out that it would, in rebuilding the wall, furnish to Rich's and Chilson the same uses in the new wall as they had enjoyed in the old one, and did not furnish the building permit as required by the court's order. The plaintiff in error excepts to this order.

Having heretofore ruled that Rich's and Chilson had at the time of the fire an easement in the west and south walls, re-spectively, of the Forsyth Corporation building, and that both easements survived the fire, we agree that the trial judge in his order of March 11, 1959, properly refused to dissolve the tem-porary injunction granted February 19, 1959, because Forsyth Corporation in its election to recognize the easements did not agree to furnish Rich's and Chilson the same uses in the new walls as they had in the old ones. The trial judge in the proper

exercise of his discretion was authorized to require that Forsyth Corporation furnish a building permit for rebuilding its building.

■ The action of Chilson, Inc., involves the south wall of the Forsyth Corporation Building and the north wall of the Chilson, Inc., building. The deed of July 6, 1892, from R. F. Maddox to Rucker, which, as above noted, conveyed the Rich's property, also conveyed to Rucker the property now owned by Chilson. At the time of this conveyance, there was a common wall resting on the Forsyth property, serving as the south wall of the Forsyth Corporation building and the north wall of the Chilson, Inc., building. The court found these facts: "This common wall situation existing then has continued to date, and it was not substantially damaged in the fire, although repairs are made necessary thereby. The evidence does not show who built this wall or when it was built"; and that "For more than fifty years this wall has served as the north wall of the building on the Chilson property and as such inclosure wall, giving also such support as is incident to a wall utilized for inclosure. Additionally, it has formed the dividing line between the buildings on the Forsyth property and the buildings on the adjacent property, and the flashings on the roof of the building of the Chilson property have been imbedded in the common wall." The evidence upon which the court based its finding was uncontradicted. The court then concluded: ". . . that where two owners use a common wall as such and one owner uses this as the north wall of its building and the other owner uses it as the south wall of its building, and the owner using it as the south wall in effect fences it in by making it a part of his building, and the testimony is that for more than fifty years it has been a common wall, and each of the owners necessarily receives some support from the wall by reason of it being a wall common to the two buildings, and it is also used for the purpose of imbedding the flashings of the roof, as shown with respect to the buildings situated on the Chilson property, that these things existing for a period of fifty years do, in fact, show such adverse user as shows, in the absence of anything to the contrary, a prescriptive easement. This means that the law infers a grant in the beginning to the owners of the Chilson property to make such use of that wall as the evidence shows has been made of it during the fifty-year period.

"The court is, therefore, of the opinion that prior to the fire an easement existed in favor of Chilson, Inc., in respect of this common wall, imposing upon the Forsyth building property a servitude in respect of the uses just referred to."

Code § 85-409 provides: "An incorporeal right which may be lawfully granted . . . may be acquired by prescription." An easement is such a right. This court in *Joel* v. *Publix-Lucas Theatres*, 193 *Ga.* 531, supra, at page 537, quoted approvingly the following from 47 C. J. 1329, et seq.: "Where a wall between adjoining buildings has, during at least the prescriptive period, usually twenty years, been continuously and uninterruptedly used as a party wall by the respective owners, such wall becomes a 'party wall' within the legal meaning of the term, or, at least, a right or easement arises to use it as such, even though the wall stands wholly on the land of one of the adjoining owners."

Georgia recognizes the general rule that, after long user without material objection or interference, a grant of the right will be presumed. See *State ex rel. Habersham* v. *Savannah & O. Canal Co.*, 26 *Ga.* 665; *Joel* v. *Publix-Lucas Theatres*, supra. " 'The extent of an easement to use a wall of an adjoining owner for the support of a building, which is acquired by prescription, is the enjoyment of the use of the wall for the support of the house as it existed during the period of prescription." *Levinson* v. *Goode*, 164 *Ga.* 361 (1) (138 S. E. 583), quoting from Barry *v.* Edlavitch, 84 Md. 95 (35 A. 170, 33 L. R. A. 294). See also 5 Powell on Real Property 245, § 690.

Accordingly, under the facts in this case, Chilson, Inc., by more than fifty years' use of the wall as a party wall, acquired an easement in the wall for uses made of the wall as outlined by the court in its order.

 The rulings made in these headnotes require no elaboration.

*Judgment affirmed. All the Justices concur.*